# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

WALTER MALONE,          ]
                              ]

    Plaintiff(s),        ]
                              ]

    vs.               ]    CV-98-N-2745-S
                              ]

JEFFERSON COUNTY      ]
COMMISSION, et al.,     ]
                              ]

    Defendant(s).       ]

**ENTERED**

NOV 2 2 2000

## Memorandum of Opinion

### I.    Introduction

In this employment discrimination action, plaintiff Walter Malone ("Malone") brings

suit against the Jefferson County Commission ("Jefferson County"), Michael W. Blackwell

("Blackwell"), Jerry Drake ("Drake")[1] and James Sollie ("Sollie") individually and in their

official capacities as officers and/or supervisors of the Roads and Transportation

Department of Jefferson County, and the Jefferson County Personnel Board ("Personnel

Board") alleging violations of 42 U.S.C. § 2000e et seq., as amended ("Title VII") and the

Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as

enforced by 42 U.S.C. § 1983 ("§ 1983"). Specifically, Malone, a black male, alleges that:

(1) he was denied both provisional and permanent appointments to the position of Traffic

Control Superintendent ("TCS") for Jefferson County because of his race; (2) Jefferson

---

[1] By Order of May 15, 2000 [Doc. No. 88], this court dismissed all claims against Jerry Drake in his individual capacity as Mr. Drake had passed away and plaintiff failed to move for substitution within ninety days of the suggestion of death being submitted to the court.



County subjected him to a hostile work environment based on race; and (3) then retaliated

against him for complaining of discriminatory treatment.

This matter is presently before the court on the motions[2] for summary judgment filed

by defendant Jefferson County on August 1, 2000, and by the defendant Personnel Board,

also filed on August 1, 2000 [Doc Nos. 97 & 100]. The motions have been fully briefed, and

the court heard oral argument on the motions on October 26, 2000. Upon due consideration,

the Personnel Board's motion for summary judgment will be **GRANTED** in all respects and

Jefferson County's motion for summary judgment will be **GRANTED IN PART** and **DENIED**

**IN PART.**

## II.   Statement of Facts[3]

The evidence submitted to the court, viewed in the light most favorable to the non-

movant, establishes the following facts:

### A.   Background

In November of 1993, Malone gained employment with Jefferson County as a Traffic

Control Technician in the county's Roads and Transportation Department. During his

---

[2] The court has often expressed a preference for early rulings on motions for summary judgment so that parties will not be placed in the position of preparing for trial on issues that may be removed from the case by a ruling on the motion. That is not the case here. The court finds itself one week before the trial date dealing with the defendants' motion for summary judgment—a result primarily from the poor lawyering on the part of all parties. Plaintiff's counsel seemingly are unaware that in order to travel from Point A to Point B (complaint to judgment), a detailed, precise, and accurate roadmap is often essential. To be sure, the Israelites eventually made the journey from Egypt to the Promised Land, but they also wandered in the desert for forty years. On the other hand, the defendants' counsel appear to have made little, if any, effort to force the plaintiff into any recognized and established path.

[3] In developing the statement of facts in this opinion, the court considered the facts proposed by the parties and the court's own examination of the evidentiary record. These are the "facts" for purposes of this opinion only. They may not be the actual facts. *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied*, *USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

2

employment, Malone frequently expressed concerns about demeaning work assignments and abusive racial comments made by his co-workers and supervisors. (Blackwell Depo., pp. 41-44; Diggs Depo., pp. 88-90). In October of 1995, Malone sought to exit the Roads and Transportation Department by way of a promotion to the position of TCS for the City of Birmingham. In accord with proper procedures, he filed his application for the vacant TCS position with the Personnel Board, an independent public body that determines the requirements for merit system promotions of Jefferson County employees as well as employees of numerous municipalities within Jefferson County. (Def. Jefferson County Ex. 13-15). If the applicant satisfies the prerequisites for a certain position, the Personnel Board "certifies" that person as "eligible" to the hiring authority in the form of a certification list. From the list of eligibles, the hiring authority chooses the candidate(s) that they believe are best qualified for the particular job. Although the Personnel Board certified Malone as eligible, the City of Birmingham did not select Malone to fill the vacant TCS position. At the time Malone was rejected by the City of Birmingham, in or around October of 1995, a similar TCS position was not available in Jefferson County's Roads and Transportation Department. (Diggs Depo., p. 39; Def. Jefferson County Ex. 18). The 1995 announcement provided, however, that the "purpose of recruitment" was "to fill one current vacancy with the City of Birmingham and any future vacancies that need to be filled within this classification in any jurisdiction served by the Jefferson County Personnel Board." (Diggs Depo., Ex. 7).

In or around June of 1996, Malone informed his direct supervisors, Sollie and Blackwell, of his interest in filling a similar supervisory position in the Roads and Transportation Department. Malone further advised his supervisors that the Personnel

3

Board had already certified him as "eligible" to fill such a position. In response, Sollie allegedly informed Malone that normal procedures would be followed and that "[a]ll qualified applicants would be considered." (Diggs Depo., Ex. 4). However, a list of eligible candidates was never requested by Jefferson County and, in accord with Personnel Board policy, the list of eligibles (including Malone) produced by the 1995 announcement expired in December of 1996.

In or around June of 1997, Malone lodged a complaint with Brenda Diggs ("Diggs"), the Employment Relations Officer ("ERO") for the Personnel Board, alleging that Sollie and Blackwell were denying him an opportunity to compete for a supervisory position in the Roads and Transportation Department. Although it is not clear whether a TCS position then existed or had even been "budgeted," Malone strongly believed that Sollie was attempting to circumvent the competitive process by assigning supervisory duties to two white employees, Ron Cole ("Cole") and Phillip Krofchick ("Krofchick"). This circumvention could be accomplished, according to Malone, by allowing the selected employees to perform supervisory duties for a period of time exceeding six months. (Diggs Depo., pp. 41-43, Ex. 7). After six months, those employees could claim increased duties during the 1996 "survey" and, therefore, would be able to request a corresponding upgrade to TCS.

Indeed, in August of 1996, Cole and Krofchick submitted Position Description Questionnaires (PDQ's) to the Personnel Board's survey administrator and Sollie "signed off" on their paperwork. (Krofchick Summary 2; Cole Summary 2). Based on the results of the 1996 survey, it was initially recommended that both Krofchick and Cole receive upgrades to TCS. (Krofchick Summary 2; Cole Summary 2). Presumably based on

4

Malone's concerns, however, Jefferson County filed a "negative appeal" of Cole and Krofchick's supervisory upgrades.   As a result, the supervisory upgrades were "rolled back" and Cole and Krofchick were returned to their original classification as electricians. (Diggs Depo., pp. 106-107; Krofchick Summary 2; Cole Summary 2).  In fact, it appears that Malone was the only employee in the Signal Shop to receive a promotion by virtue of the survey process.  Malone was promoted to the position of Senior Traffic Control Technician, making him the second highest level supervisor in the Signal Shop.  According to Drake, Director of the Roads and Transportation Department, however, the objection to the upgrades of Cole and Krofchick was a "mistake."  (Cole Summary 2).  Indeed, in a letter and reorganization chart forwarded to Gary White ("White"), Commissioner of Jefferson County, Drake suggested that Cole and Krofchick were "acting as supervisors [and] should be correctly classified and compensated."  (Cole Summary 2).

During this same time frame, Malone participated in a meeting with Commissioner White and Ben Payton ("Payton"), Director of the Personnel Board.  According to Malone, during the course of the meeting, he reiterated his interest in receiving a promotion to TCS in the Roads and Transportation Department.  Commissioner White recalled meeting with Malone as well as "working with the legal department, and [how] they were very attuned, very aware, of the situation and [how] they wanted to be sure if a reorganizational structure was made at the traffic division, that Walter [Malone] be given those considerations." (White Depo. pp. 23).  In an effort to ensure that Malone would be allowed to compete for supervisory positions, the ERO recommended to the county's legal department that "no one

5

from Jefferson County Traffic Engineering would have any input into test development or serve as subject matter experts." (Diggs Depo., pp. 69, 77; Ex. 7).

## B. The Employment Decisions at Issue

The controversy in the present matter is focused on the decisions to award both provisional and permanent TCS promotions to Cole and Krofchick, while bypassing Malone. On August 18, 1998, Drake, through Commissioner White, requested that the Personnel Board certify a list of eligibles to fill two TCS positions in the Roads and Transportation Department. Because the two TCS positions in Roads and Transportation were then unoccupied, Drake also requested that the Personnel Board authorize the provisional appointments of Cole and Krofchick to those positions. (Williams Depo., pp. 74, 79; Ex. 7; Payton Depo., pp. 35-36).

The ordinary procedure when the Personnel Board receives a request for a provisional appointment is to determine whether a list of eligible candidates then exists and, if not, whether the individuals selected by the appointing authority satisfy the minimum requirements for the job as set forth in the most recent job announcement, class specifications, or job description. (Williams Depo., pp. 18-19). Because Cole and Krofchick satisfied the minimum qualifications for the TCS position and a current list of eligibles did not exist, the provisional appointments of Cole and Krofchick were ultimately approved and were to continue for a period of four (4) months, or until a list of eligibles could be established. (Williams Depo., pp. 33-37).

While Cole and Krofchick acted as TCSs for the Roads and Transportation Department in a provisional capacity, Cynthia Hatcher ("Hatcher"), a Personnel Analyst III

6

for the Personnel Board, conducted a review of old job announcements and PDQ's, and even spoke with subject matter experts, including Sollie, in order to prepare a draft announcement regarding the permanent TCS position. (Hatcher Depo., pp. 12 -13). The draft announcement, completed in October of 1998, was forwarded to the Roads and Transportation Department for review and comment. The draft was returned to Hatcher in December of 1998 with a recommendation, made by Drake and Blackwell, that the TCS announcement require all applicants to hold a journeyman electrician's certification[4] or the ability to gain such a certificate within six months. (Hatcher Depo., Ex. 3; Blackwell Depo. pp. 55). According to Blackwell, a time frame of six months was added because they believed that "Walter was fully qualified, and . . . [they] did not want anything not to qualify him." (Blackwell Depo., pp. 55). Malone, however, recalls that Drake advised him that a "Black would never work for him." (Malone Depo. 3, pp. 106-107).

After reviewing a copy of Jefferson County Ordinance No. 367 and Section A-109 of the Jefferson County Electrical Code, along with PDQ's and old TCS job announcements, Hatcher and her superiors verified that a number of tasks performed by the County's TCS would require a journeyman electrician's card. Hatcher worked on the announcement for several months and, in January of 1999, the county's TCS position was finally announced. The final announcement, dated January 8, 1999, provided that all applicants "must submit a photocopy of journeyman's electrician card at the time of application or within (2) weeks thereafter." (Defendant Jefferson County, Ex. 17). Malone did not possess a journeyman

---

[4] A journeyman electrician is an electrician who, after several years of apprenticeship, is certified by the state or county to perform electrical installations or service.

electrician's card when he attempted to be certified by the Personnel Board for the position, nor did he obtain such a certification within two weeks after submitting his application. (Malone Depo., pp. 233, 236). Therefore, Malone was not certified or placed on the "list of eligibles" by the Personnel Board. (Malone Depo. II, p. 258). On March 17, 1999, both Cole and Krofchick were certified as eligible for the TCS position as they satisfied all requirements, including the possession of a journeyman or master electrician's card. On April 24, 1999, both Cole and Krofchick were selected by Jefferson County to fill the two TCS positions on a permanent basis.

After an unsuccessful attempt to reach an amicable solution with Jefferson County and the Personnel Board, Malone filed complaints with the EEOC and, thereafter, commenced the present action on October 29, 1998. In his complaint, Malone asserts claims based upon theories of disparate treatment, hostile work environment, and retaliation. Since Malone has voluntarily dismissed his hostile work environment and retaliation claims,[5] the only issue before the court is whether Malone raises a genuine issue of material fact with respect to his allegations of disparate treatment. Essentially, Malone contends that the Personnel Board and Jefferson County declined to provisionally appoint him to the TCS position and intentionally amended the TCS job announcement in order to exclude him from the list of eligibles because of his race.

_____

[5] In his responsive submission, plaintiff has indicated that he does not intend to pursue a hostile work environment claim. (Plf's Opposition, p. 1, ft. 1). The plaintiff made a similar concession with respect to his retaliation claim during oral argument before the court. However, to the extent plaintiff has not voluntarily waived his retaliation claim, the court notes that he has failed to identify any adverse employment action resulting from the filing of his discrimination charge with the EEOC. In the absence of any aid from the plaintiff the court assumes he isn't serious about this claim and will henceforth disregard it. The court also notes that the deadline for amending the complaint was July 7, 1999.

8

### III.    Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Where the nonmoving party will bear the burden of proof at trial, there is no requirement "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex*, 477 U.S. at 323. "Instead, the moving party simply may '"show[ ]"'--that is, point[ ] out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir.1991) (*en banc*) (quoting *Celotex*, 477 U.S. at 324); *see also Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (same); *Young v. City of Augusta ex rel. DeVaney*, 59 F.3d 1160, 1170 (11th Cir. 1995). However, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The moving party must instead make an "affirmative showing" that crucial evidence is missing "by reference to any combination of the following: pleadings; deposition testimony of a party or its witness;

9

affidavits; responses to interrogatories . . . ; requests for admission . . . ; and any other exchanges between the parties that are in the record." *Cheatwood v. Roanoke Industries*, 891 F. Supp. 1528, 1533 (N.D. Ala. 1995) (Hancock, J.).

"Alternatively, the moving party may support its motion for summary judgment with affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial. If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Four Parcels of Real Property*, 941 F.2d at 1437-38 (citations omitted).

At this stage, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, she may not merely rest on her pleadings. *Id.* at 324. The nonmoving party must make a specific, affirmative showing that a genuine factual dispute exists. If the required showing is not made, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

10

After the plaintiff has responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are

11

functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.   Discussion

This case presents a situation in which two separate entities, Jefferson County and the Personnel Board, make important, yet independent, contributions to the hiring, termination, and promotion of employees within Jefferson County. This dual involvement, however, increases the difficulty in determining which entity has final decision making authority with respect to a particular employment action. This is especially true in the present situation where each defendant suggests that promotional responsibility lies with the other, and the plaintiff alleges unlawful discrimination on the part of both. For this reason, the court finds the most appropriate way to resolve the issues presented in the motions is to address the arguments as they relate to each particular defendant.

### A.   Jefferson County Commission ("Jefferson County")

#### 1.   Provisional Appointments[6]

##### a.   Title VII Claims

If Malone is to avoid summary judgment on his claim that he was intentionally passed over for provisional appointments to the position of TCS, he must submit sufficient evidence

---

[6] The defendants have failed to fully address whether a temporary appointment is cognizable under a failure to promote theory. In the absence of such aid, and in light of evidence suggesting that the appointments are renewable, include an increase in salary, and carry increased responsibility, the Court will assume for summary judgment purposes that Malone is entitled to seek relief under Title VII and § 1983.

12

of Jefferson County's discriminatory motive to create a genuine issue of fact regarding whether there is a causal link between his race and the denial of a provisional appointment. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Where a plaintiff seeks redress based upon a theory of disparate treatment, as does Malone, a causal link may be established by either: (1) presenting "direct evidence" of a discriminatory motive, or (2) establishing a discriminatory motive indirectly through the familiar procedure set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Harris v. Shelby County Bd. of Educ.*, 99 F.3d 1078, 1083 (11th Cir. 1996) (providing that, in order to prove a disparate treatment claim, "'[t]he plaintiff must, by either direct or circumstantial evidence, demonstrate by a preponderance of the evidence that the employer had a discriminatory intent . . .'") (quoting *Batey v. Stone*, 24 F.3d 1330, 1334 (11th Cir. 1994)). In support of his contention that race was the decisive factor in the denial of a provisional appointment to TCS, Malone purports to offer both direct and circumstantial evidence of a discriminatory motive. Since "[t]he analytical framework and burden of production varies depending on the method of proof chosen," *see Standard*, 161 F.3d at 1330, the court will address Malone's direct and circumstantial evidence arguments separately.

## (1)    Direct Evidence

"Direct evidence" is defined as evidence, which if believed, "establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Standard*, 161 F.3d at 1330 (citing *Carter v. Miami*, 870 F.2d 578, 580-81

13

(11th Cir. 1989)); *Taylor v. Runyon*, 175 F.3d 861, 867 (11th Cir. 1999).[7] Therefore, stray remarks, statements by non decision makers and statements by decision makers unrelated to the adverse employment decision do not constitute "direct evidence" of discrimination. *EEOC. v. Alton Packaging Corp.*, 901 F.2d 920, 924 (11th Cir. 1990); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) ("[e]vidence that only suggests discrimination or that is subject to more than one interpretation does not constitute direct evidence") (citations omitted). For this reason, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of . . . [race will] constitute direct evidence of discrimination." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990) (citations omitted); *see also Copley v. Bax Global, Inc.*, 80 F. Supp. 2d 1342, 1348 (S.D. Fla. 2000) ("[i]t is a rare case . . . where there exists actual direct evidence of discrimination"). Although rare, if a claimant can produce direct evidence that she suffered an adverse employment action because of her race, "the ultimate issue of discrimination is proved." *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1557 (11th Cir. 1993). In such a situation, the *McDonnell Douglas* analysis for circumstantial evidence cases does not apply and the direct evidence, standing alone, is usually sufficient to defeat a motion for summary judgment. *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641

---

[7] The court notes that, in *Wright v. Southland Corp.*, 187 F.3d 1287 (11th Cir. 1999), Judge Tjoflat rejects the traditional definition of direct evidence in favor of a "preponderance" definition, i.e., "evidence from which a reasonable factfinder could find, by a preponderance of the evidence, a causal link between an adverse employment action and a protected personal characteristic." *Id*. at 1294. This less stringent definition, however, has since been rejected by two federal district courts as "'mere obiter dictum, as it was not necessary to the resolution of the case, and neither of the two other members of the panel joined that portion of the opinion.'" *Ferrell v. Masland Carpets, Inc.*, 97 F. Supp. 2d 1114 n. 11 (S.D. Ala. 2000) (quoting *Copley v. Bax Global, Inc.*, 80 F. Supp. 2d 1342, 1348 (S.D. Fla. 2000). In fact, as pointed out by both *Ferrell* and *Copley*, the Eleventh Circuit has not applied Judge Tjoflat's "preponderance" definition of direct evidence in its most recent disparate treatment decisions. *See Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1358-59 (11th Cir. 1999); *Beaver v. Rayonier, Inc.*, 200 F.3d 723, 729-730 (11th Cir. 1999).

(11th Cir. 1998); *Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 n.11 (11th Cir. 1998).

In the present matter, Malone's proffer of alleged "direct evidence" consists of one statement allegedly made by Drake, the Director of the Roads and Transportation Department, that a "Black would never work for him." (Malone Depo., pp. 106-107). According to Malone, the statement was made in a 1999 phone conversation, during which, Malone was informed that he would not receive the TCS promotion. Although Drake is unquestionably not the "final decision-maker" with respect to provisional appointments in the Roads and Transportation Department, the Eleventh Circuit has held that discriminatory animus harbored by one who makes recommendations to the decision-maker may be imputed to the decision-maker where he simply "rubber stamped" those recommendations without conducting an independent investigation. *See Llampallas v. Mini-Circuits, Inc.*, 163 F.3d 1236, 1248 (11th Cir. 1998); *see also Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999). Commissioner White, the final decision maker for Jefferson County with respect to provisional appointments, by his own admission, never investigated the recommendations made by Drake or Blackwell. (White Depo., p. 24). Therefore, without question, if believed, Drake's statement would constitute the type of "blatant remark" categorized as "direct evidence" in *Early*, 907 F.2d at 1081-82.

Upon a thorough review of the circumstances and context in which Malone's allegation was elicited, however, this court is disinclined to hold that Drake's statement, standing alone, is sufficient to defeat Jefferson County's motion for summary judgment. First of all, Drake died before he could be deposed in this matter and, therefore, was never

15

afforded an opportunity to challenge Malone's allegation. Second, Malone's recollection of the extremely probative statement occurred during re-examination at the end of his third deposition, and after defense counsel had thoroughly examined the racial statements allegedly made by Malone's superiors. Finally, Malone has failed to present any corroborating evidence suggesting that the statement was actually made. In holding that Drake's alleged statement is not persuasive enough to defeat Jefferson County's motion for summary judgment, however, the court does not intend to imply that Drake did not actually make the statement attributed to him by Malone. To the contrary, the court simply believes that this particular piece of "direct evidence" would be more appropriately considered along with Malone's proof of pretext under the *McDonnell Douglas* framework.

## (2)   Circumstantial Evidence of Discrimination

Since his direct evidence of intentional discrimination is insufficient to defeat Jefferson County's motion for summary judgment, Malone must turn to the circumstantial evidence test set out in *McDonnell Douglas*.[8] Under *McDonnell Douglas*, a plaintiff seeking to establish a claim based on circumstantial evidence has the initial burden of establishing a *prima facie* case of discrimination. "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." *Lathem v. Department of Children & Youth Servs.*, 172 F.3d 786, 792 (11th Cir. 1999) (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). In order to

---

[8] The *McDonnel Douglas-Burdine* burden shifting analysis was not intended to be "rigid, mechanized, or ritualistic." *Green v. School Bd.,* 25 F.3d 974, 978 (11th Cir. 1994). Instead, it is meant to be a "sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Id.*

16

establish a *prima facie* case, the plaintiff must introduce evidence of actions taken or decisions made by an employer "from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576 (1978). The burden of production then shifts to the defendant to articulate a "legitimate nondiscriminatory reason" for the allegedly discriminatory employment action. *Lathem*, 172 F.3d at 793. "[I]t is possible for the defendant to present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted." *Brown v. American Honda Motor Co.,* 939 F.2d 946, 950 (11th Cir. 1991), *cert denied*, 502 U.S. 1058 (1992) (quoting *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir. 1987).

Once the defendant presents a legitimate nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Texas Dep't of Community Affairs v. Burdine* 450 U.S. 248, 255 n.10 (1981). The plaintiff must then prove by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather is a mere pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. Conclusory allegations of discrimination are insufficient; rather, the plaintiff must present concrete evidence of pretext in the form of clear and specific facts. *Earley*, 907 F.2d at 1083-84 (11th Cir. 1990). A plaintiff may establish pretext directly by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of belief. *Combs v. Plantation Patterns, Meadowcraft, Inc*., 106 F.3d 1519, 1528 (11th Cir. 1997); *see also Bogle v. Orange County Bd. of County Comm'rs,* 162 F.3d 653, 658 (11th Cir. 1998)(declaring that

17

the defendant was not entitled to judgment as a matter of law if plaintiff produced "any evidence that would permit a reasonable jury to disbelieve the proffered reasons for his discharge").

If the plaintiff succeeds in meeting this burden, the disbelief of the defendant's proffered reasons, together with the *prima facie* case, is sufficient circumstantial evidence to support a finding of discrimination and to preclude summary judgment. *Combs*, 106 F.3d at 1529. Because of the difficult factual questions involved in assessing an employer's "true motivations," once the plaintiff has presented evidence raising a question about those motivations, summary judgment is ordinarily inappropriate. *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 919 (11th Cir. 1993). If evidence in the record "demonstrate[s] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence," the final assessment of the employer's motivation must be left to the jury. *Combs,* 106 F.3d at 1538 (quoting *Sheridan v. E.I. Dupont de Nemours & Co.*, 100 F.3d 1061, 1072 (3d Cir. 1996) (en banc)).

### (a) The *Prima Facie* Case

The Personnel Board contends that Malone cannot establish a *prima facie* case of disparate treatment. To establish a *prima facie* case discrimination in the context of a failure to promote claim, Malone must produce sufficient evidence to create a genuine issue of material fact with regard to whether he (1) is a member of a protected minority group; (2) was qualified for and applied for the promotion; (3) was rejected in spite of his qualifications; and (4) whether after his rejection the defendant either continued to attempt

18

to fill or in fact filled the position with a person outside of the protected class. *See Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998).

Apparently conceding that three of the foregoing elements have been satisfied, Jefferson County asserts that Malone cannot establish a *prima facie* case of race discrimination because he was not "qualified" for a provisional appointment to the TCS position. More specifically, Jefferson County contends that Malone was not qualified for the TCS position because he did not hold a journeyman's electrical card at the time the provisional appointment was made. (Jefferson County Reply, at p. 15). For purposes of employment discrimination law, a person is "qualified" for a particular position if "he meets the criteria that the employer has specified for the position." *Wright*, 187 F.3d at 1301 (citing *Thornley v. Penton Publ., Inc.*, 104 F.3d 26, 29 (2d Cir. 1997)).

As described below, the evidence of record clearly suggests that Malone satisfied the necessary qualifications for a provisional TCS appointment. First of all, Charles Williams, Jr. ("Williams"), a Personnel Analyst II for the Personnel Board, reviewed the qualifications of Cole and Krofchick in order to ensure they satisfied the minimum requirements for the TCS position. (Williams Depo., p. 32). In making this determination, Williams relied upon the qualifications as set forth in the most recent TCS job announcement and class specifications. (Williams Depo., p. 34). While Williams was not certain as to whether the recent job announcement he reviewed was identical to the 1995 TCS announcement under which Malone was previously certified as eligible (for the City of Birmingham), the deposition testimony of Hatcher clearly indicates that the possibility of adding a journeyman's requirement was not even brought to the Personnel Board's attention

19

until November of 1998 (Hatcher Depo., p. 33). It is illogical to suggest that Malone was disqualified by his failure to meet a requirement not yet adopted. It seems clear, had his name been submitted to the Personnel Board for appointment to one of the provisional positions, that Malone likely would have received the provisional appointment. Jefferson County's contention that Malone was not "qualified" for the TCS position for lack of a journeyman's certificate is without merit.

### (b) Legitimate Non-Discriminatory Reason

Since Malone has produced sufficient evidence of a prima facie case of intentional race discrimination, Jefferson County must assume the burden of articulating one or more "legitimate, non-discriminatory reasons for its employment action." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). This burden is "exceedingly light," *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138 (11th Cir. 1983), and the defendant need only offer admissible evidence sufficient to raise a genuine issue of material fact as tot whether it had a legitimate reason. *See Hill v. Seabord C.L.R. Co.*, 767 F.2d 771, 774 (11th Cir. 1985). Jefferson County contends that Malone was not provisionally appointed to the position of TCS because "Personnel Board policy requires the County to promote only from a list of persons certified by the Personnel Board." (Jefferson County's Brief, at p. 16; Reply at p. 15).

The court need not tarry long in deciding this matter. As discussed above, Jefferson County, as hiring authority, is permitted to make provisional appointments only when the Personnel Board does not possess a current list of eligible candidates for a particular

20

position.[9] During the four month provisional appointment period, the Personnel Board
reviews announcements, PDQ's and class specifications in order to develop an acceptable
set of qualifications which can then be used to generate a list of eligibles. Since
candidates are not "certified" by the Personnel Board as "eligible" for provisional
appointments, the contention that Malone was not provisionally appointed because he
lacked proper certification is simply without merit. In other words, Jefferson County's
legitimate nondiscriminatory reason for declining to provisionally appoint Malone, i.e., he
wasn't certified as "eligible" by the Pesonnel Board, places the proverbial cart before the
proverbial horse. For this reason, Jefferson County has failed to present a legitimate non-
discriminatory reason for its employment decision and, accordingly, its motion for summary
judgment with respect to Malone's Title VII provisional promotion claim is due to be
denied.

## b. Equal Protection Claims

Malone also brings this action under 42 U.S.C. § 1983 based on an alleged violation
of the Equal Protection Clause of the Fourteenth Amendment. Since both causes of action
seek relief for identical conduct, i.e., the failure to provisionally appoint Malone to the
position of TCS for Jefferson County, "the elements of the two causes of action are the
same." *Cross v. Alabama Dep't of Mental Heath and Mental Retardation*, 49 F.3d 1490,
1508 (11th Cir. 1995) (quoting *Hardin v. Stynchcomb*, 691 F.2d 1364, 1316 n. 16 (11th Cir.

---

[9]Personnel Board Rule 4.9(c) provides: "PROVISIONAL APPOINTMENT. In the absence of an eligible
list, the Board may authorize the filing of a vacancy by a provisional appointment. Any such candidate for
provisional appointment must meet education, experience and related requirements set forth by the Director.
Provisional shall be for a period of not more than four (4) months. [N]o provisional appointment shall be continued
for more than ten (10) days after the establishment of any eligible list for the class. . . ." (Def. Personnel Board,
Ex. 3).

21

1982)); *see also LaFleur v. Wallace State Community College*, 955 F. Supp. 1406, 1417 (M.D. Ala. 1996). Accordingly, the court's determination that Malone presented sufficient evidence of discrimination to survive summary judgment on his Title VII claim applies to his equal protection claim as well. While the court's § 1983 analysis would not ordinarily end at this juncture, Jefferson County has failed to present any explanation as to why municipal[10] and/or individual liability[11] is inapplicable under the present facts. For this reason, summary judgment is due to be denied with respect to Malone's equal protection claims against Jefferson County as well as against Sollie and Blackwell in their individual capacities.

## 2. **Permanent TCS Position**

In addition to challenging the denial of a provisional appointment, Malone also alleges that Jefferson County was motivated by a discriminatory animus in denying him a permanent promotion to the position of TCS in the Roads and Transportation Department. Again, Malone brings claims under Title VII and the Equal Protection Clause as enforced

---

[10] In *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), the Supreme Court held that local governments may not be held liable under § 1983 on a theory of *respondeat superior*. Instead, local government bodies may only be held liable under § 1983 where the plaintiff's injury results from the application of a policy or custom. *Id.* at 694, 98 S. Ct. at 2035-36, 56 L. Ed. 2d at 638. The policies and customs of either the entity itself or its official decision-makers can give rise to liability if their application results in a deprivation of a plaintiff's constitutional rights. *Id.* Later, in *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986), the Supreme Court clarified Monell's "policy or custom" requirement by explaining that local government "liability may be imposed for a single decision by [local government] policymakers under appropriate circumstances." *See also Martinez v. City of Opa-Locka*, 971 F.2d 708, 713 (11th Cir. 1992).

[11] The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). A two part test is applied in ascertaining whether a government official is entitled to qualified immunity, the first of which requires the government official to demonstrate that "'he [or she] was acting within the scope of his [or her] discretionary authority when the allegedly wrongful acts occurred.'" *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir. 1988) (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983)).

22

by § 1983. Both claims, premised on the same facts, require evidence of intentional discrimination on the basis of race. Therefore, the *McDonnell Douglas* framework, as described above, is applicable to both claims. *See Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th Cir. 1995). For the reasons described below, however, Malone cannot establish a *prima facie* case of intentional discrimination on the part Jefferson County.

Pursuant to the *McDonnell Douglas* shifting burdens procedure, Malone carries the initial burden of establishing a *prima facie* case of discrimination by producing evidence sufficient to create a genuine issue of material fact on each of the following matters: (1) he is a member of a protected minority group; (2) he was qualified for and applied for the promotion; (3) he was rejected in spite of his qualifications; and (4) after his rejection the defendant either continued to attempt to fill or in fact filled the position with a person outside of the protected class. *See Walker*, 158 F.3d at 1186. Under the present facts, however, Malone cannot prove that Jefferson County rejected him in spite of his qualifications.

As evidenced by the fact that Malone filed his EEOC complaints in February of 1998 and January of 1999, roughly three months before Cole and Krofchick were selected over Malone for the permanent TCS position, the denial of his application for a TCS promotion was apparently a forgone conclusion. In fact, while Jefferson County unquestionably enjoys final decision-making authority with respect to permanent promotions, Jefferson County wasn't even given the opportunity to exercise that authority, and reject Malone for the job,

23

because the Personnel Board declined to "certify" him as "eligible" for the TCS position.[12]

Therefore, viewing the evidence in a light most favorable to Malone, his employment

opportunity was terminated at the certification stage, one step shy of Jefferson County's

ability to make a final promotional decision.[13]   Since it did not reject Malone for the

promotion, Malone cannot prove his *prima facie* case of discrimination against Jefferson

County.  Accordingly, summary judgment is due to be granted in favor of Jefferson County

on Malone's Title VII and § 1983 claims for failure to promote him to a permanent TCS

position.[14]

## B.     Jefferson County Personnel Board ("Personnel Board")

### 1.     Provisional Appointments

Malone also alleges that the Personnel Board discriminated against him during the

provisional appointment process in violation of Title VII and the Equal Protection Clause of

the Fourteenth Amendment. These claims must fail, however, because the Personnel

Board's remote involvement in the provisional appointment process simply cannot amount

to "rejecting" Malone for the job. *See Walker*, 158 F.3d at 1186.

---

[12] Personnel Board Rule 4.9(b) provides: "PERMANENT APPOINTMENT. Employment of an eligible from an eligible list in a full-time permanently budgeted position; after the satisfactory completion of a probationary period, shall be considered a permanent appointment."  (Def. Personnel Board, Ex. 3).

[13] Although Jefferson County is not the final decision maker with respect to the certification process, any discriminatory animus harbored by Jefferson County, as a recommending entity, may be imputed to the decision maker if it simply "rubber stamped" those recommendations without conducting an independent investigation. *See Llampallas v. Mini-Circuits, Inc.*, 163 F.3d 1236, 1248 (11th Cir. 1998).

[14] Summary judgment is also due to be granted in favor of Jefferson County to the extent that Malone seeks to hold Sollie and Blackwell individually liable under § 1983 for interference with his equal protection rights because their actions are not the proximate cause of the interference of which Malone complains. *See* section III, B, 2.

24

In or around August of 1998, Drake, the Director of the Roads and Transportation Department, requested that the Personnel Board certify a list of eligibles to fill two TCS positions in the signal shop. Since formulating an announcement and generating a list of eligibles would take some time, Drake, through Commissioner White, requested that the Personnel Board authorize the provisional appointments of Cole and Krofchick to those positions (Williams Depo., pp. 74, 79, Ex. 7; Payton Depo., pp. 18-19). Upon receiving the request from Jefferson County, the Personnel Board, as required by Personnel Board Rules, reviewed the appointees' credentials along with the most recent job announcements and class specifications, and determined that both candidates satisfied the minimum requirements for the position. (Williams Depo. pp. 18-19, Ex. 10, p. 2). Since both candidates satisfied the minimum requirements, Gregory James ("James"), Personnel Division Manager, recommended that Director Payton approve Jefferson County's selection of provisional appointees.[15] On August 27, 1998, after reviewing James' recommendation, Director Payton approved the provisional appointments of both Cole and Krofchick to the position of TCSs in the Roads and Transportation Department. (Williams Depo., Ex. 10, p.1).

---

[15] For example, in his letter to Director Payton recommending the provisional appointment of Cole, James stated:

> Rule 4.9(c) of the Rules and Regulations provides that provisional appointment may be authorized by the Personnel Board in the absence of an eligible list and the candidate meets education, experience, and related requirements. The Jefferson County Department of Roads and Transportation would like to provisionally appoint Phillip Richard Krofchick to the Position of Traffic Control Superintendent.
>
> Since all requirements have been met, I recommend approval.

(Williams Depo., Ex. 10, p.2 - James Letter to Director Payton, August 27, 1998).

The Personnel Board argues, and this Court tends to agree that, at least with respect to provisional appointments, the Personnel Board's role in the matter is limited to determining whether the employee(s) selected by the appointing authority meet the minimum requirements for the position. In other words, once an appointment is made by the appointing authority (in this case Jefferson County), the Personnel Board compares the appointee's qualifications with the requirements on file to ensure that he or she is competent to fill the temporarily vacant position. Since the appointment is to last only as long as necessary for the Personnel Board to generate a list of eligibles, and the Personnel Board Rules prevent a provisional appointee from gaining a tactical advantage over future eligibles, the plaintiff cannot reasonably argue that the Personnel Board was required to conduct its own investigation into whether the employee(s) selected for a four month tenure by the appointing authority are truly the most qualified for the job. In fact, grafting such an investigatory requirement into the Personnel Board's rules would be contrary to the concept of a "provisional appointment;" i.e., an appointment that exists only until the Personnel Board develops a list of qualified candidates. In short, because its remote involvement in the provisional appointment process simply cannot amount to rejecting Malone for the job, he cannot, as a matter of law, establish a *prima facie* case of discrimination against the Personnel Board. For this reason, as described above, Malone must pursue his action against Jefferson County, the appointing authority and final decision maker with respect to the provisional appointments of Cole and Krofchick. Summary judgment is due to be granted in favor of the Personnel Board on Malone's Title VII and § 1983 claims for failure to provisionally appoint Malone to a TCS position.

26

## 2. Permanent TCS Position

In addition to challenging the denial of a provisional appointment, Malone also alleges that the Personnel Board was motivated by a discriminatory animus in denying him a permanent promotion to TCS in violation of Title VII and the Equal Protection Clause. As mentioned above, although the Personnel Board does not have the authority to make the final decision as to who should get a particular promotion, it is authorized to make decisions that impact who can and cannot be *considered* for the promotion by certifying applicants to the hiring authority as "eligible" for a vacant position. Therefore, viewing the evidence in a light most favorable to Malone, it is the Personnel Board's decision to add a journeyman electrician requirement to the 1999 job announcement that is challenged as discriminatory, not the inevitable result of being passed over by Jefferson County, the hiring authority. Since Malone has failed to proffer any "direct evidence" of a discriminatory animus on the part of the Personnel Board, he must establish a discriminatory motive indirectly through the familiar procedure set out in *McDonnell Douglas*.

### a. The *Prima Facie* Case

The Personnel Board contends that Malone cannot establish a *prima facie* case of disparate treatment. In order to establish a *prima facie* case of disparate treatment in this particular context, Malone must produce sufficient evidence to create a genuine issue of material fact on each of the following matters: (1) he is a member of a protected minority group; (2) he was qualified for and applied for the promotion; (3) he was denied a job

27

opportunity despite his qualifications;[16] and (4) after his denial the defendant continued to attempt to fill or in fact filled the position with a person outside of the protected class. *See Walker*, 158 F.3d at 1186; *See also Wilson v. Bailey*, 934 F.2d 301, 304 (11th Cir. 1991).

The Personnel Board contends that Malone cannot establish his *prima facie* case because he was not "qualified" for the permanent TCS position at the time the list of eligibles was established. Malone was not qualified, according to the Personnel Board, because he failed to submit proof of a valid journeyman electrician's certificate within the time period (two weeks) provided by the January 1999 job announcement. While technically correct, this argument overlooks the very core of Malone's discriminatory allegations, i.e., that the journeyman's requirement was added for the sole purpose of disqualifying him from the TCS promotion. *See* 42 U.S.C. § 2000e-2(a)(1) (providing that "[i]t shall be an unlawful employment practice for an employer -- (1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ."). Since it is undisputed that Malone was qualified for the job prior to the addition of the journeyman's requirement, the court is inclined to hold that Malone has established a *prima facie* case of disparate treatment. (Blackwell Depo., p. 55).

## b.    Legitimate Non-Discriminatory Reason

---

[16] Consistent with the notion that the *McDonnel Douglas* burden shifting analysis was not intended to be "rigid, mechanized, or ritualistic," *Green v. School Bd.*, 25 F.3d 974, 978 (11th Cir. 1994), the Eleventh Circuit has approved of altering the third requirement for establishing a *prima facie* case  from being "rejected for the job" to being "denied a job opportunity" in instances, such as the present, where a Personnel Board is not the final decision maker with respect to promotions. *See Wilson v. Bailey*, 934 F.2d 301, 304 (11th Cir. 1991).

Since Malone has produced sufficient evidence of a *prima facie* case of intentional race discrimination, the Personnel Board must assume the burden of articulating one or more "legitimate, non-discriminatory reasons for its employment action." *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997). The Personnel Board contends that the TCS positions were "new" positions in Jefferson County and the duties to be performed by the county TCS necessitated the amendment to the 1995 City of Birmingham announcement. Specifically, because the county TCS would be required to perform more electrical work not required of a city TCS, the Board contends that the addition of a journeyman's certificate was required by Jefferson County Ordinance No. 367[17] and Jefferson County Electrical Code A-109.1 (1993).[18] Clearly, if believed, this explanation would be a sufficient legitimate, non-discriminatory reason for the Personnel Board's actions.

### c.    Plaintiff's Proof of Pretext

Since the Personnel Board has proffered a legitimate non-discriminatory reason for adding a journeyman electrician's certificate to the announcement and, thus, declining to certify Malone as eligible for the county TCS position, any inference of discrimination arising from his *prima facie* case is eliminated and Malone now has the ultimate burden of pointing to specific evidence sufficient to call into question whether the Personnel Board's articulated reason was a mere pretext for unlawful discrimination. *Burdine*, 450 U.S. at 256. In an attempt to persuade the court that the Personnel Board's proffered reason for adding

---

[17]In pertinent part, Jefferson County Ordinance No. 367 provides that "All work permitted under this ordinance shall meet all requirements of the Electrical Code."

[18]In pertinent part, the Jefferson County Electrical Code, section A-109.1, requires that "where any electrical work is being done, a master or journeyman electrician shall at all times be present on the job, and in actual control, and in charge of the work being done . . . ."

a journeyman electrician's requirement is pretext, Malone proffers both direct and circumstantial evidence. *See id.* Rather than proffering evidence that tends to suggest discrimination on the behalf of the Personnel Board, however, Malone's allegations of discriminatory treatment go almost exclusively toward the motives of Sollie, Blackwell and Drake who, while acting in the scope of their employment with Jefferson County, allegedly made material misrepresentations to the Personnel Board in recommending additional requirements for the TCS position. If the Personnel Board acted as the conduit of Jefferson County's discriminatory animus, i.e., its cat's paw, the innocent adoption of the journeyman's requirement by its employees will not shield the Personnel Board from liability. *See Llampallas v. Mini-Circuits, Inc.*, 163 F.3d 1236, 1248 (11th Cir. 1998) (providing that "if the plaintiff shows the harasser employed the decisionmaker as her 'cat's paw' -- i.e., the decisionmaker acted in accordance with the harasser's decision without herself evaluating the employee's situation -- causation is established") (citation omitted); *see also Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999) ("When the biased recommender and the actual decisionmaker are not the same person or persons, a plaintiff may not benefit from the inference of causation that would arise from their common identity"). As discussed below, however, this is not a cat's paw situation.

Since his employment with Jefferson County commenced, Malone consistently complained about unfavorable work assignments and a racially abusive work atmosphere. In particular, Malone has presented circumstantial evidence that Sollie and Blackwell, his direct supervisors, impeded his promotional opportunities in 1996 by failing to request a list of eligibles and once again in 1997 by attempting to "manipulate" the survey process to

30

prevent Malone from competing for a promotion. However, because Malone failed to file a charge of discrimination within 180 days of these alleged discriminatory actions, any cause of action based upon those actions are barred as untimely. *See* 42 U.S.C. § 2000e-5(e); *Thomas v. Kroger Co.*, 24 F.3d 147, 150 (11th Cir. 1994). Nevertheless, those actions are relevant and will be considered as they shed light on Malone's timely allegation that a journeyman electrician's requirement was added to the TCS announcement in order to disqualify him for the promotion. In support of this contention, Malone proffers the following evidence: (1) the possibility of adding a journeyman electrician's certificate was initiated by Jefferson County at the behest of Sollie and Blackwell; (2) despite the ERO's recommendations, Sollie acted as a "subject matter expert" in advising the Personnel Board of the electrical nature of the TCS position; (3) the PDQ's, utilized by the Personnel Board in determining job responsibilities, were filled out by Cole and Krofchick, the individuals against whom Malone would be competing for TCS and who already held a journeyman or higher level electrician's certificate; and (4) Drake, director of Roads and Transportation, allegedly told Malone that a "Black would never work for him." According to Malone, the aforementioned evidence is more than sufficient to create a genuine issue of material fact as to whether the journeyman's requirement was added in an attempt to disqualify him from TCS. The court tends to disagree.

First of all, even if the foregoing allegations are taken as true, the discriminatory animus harbored by Malone's supervisors is irrelevant if the duties to be performed by the county TCS fall within the purview of Jefferson County Ordinance No. 367 and Jefferson County Electrical Code section A-109.1. Moreover, the Personnel Board's determination

31

that the county TCS job description necessitated the inclusion of a journeyman's requirement in its February 1999 job announcement was not simply an unconsidered approval of Jefferson County's recommendation to include the same. *See Llampallas*, 163 F.3d at 1249. To the contrary, Hatcher, an African American employee of the Personnel Board, independently verified the need to add a journeyman electrician's requirement to the draft announcement. For instance, in her deposition testimony, Hatcher stated that, in addition to talking to subject matter experts for both the County and City, she:

> also looked at the ordinance [Def. Personnel Bd. Ex. 12] which was submitted with -- along with this draft [including journeyman's recommendation], which is a County ordinance dictating that there -- you must be a journeyman or whatever. And reviewed it with my supervisor, and also looked at the Alabama Code, which supports anyone who's working or signing off on electrical type duties must have a journeyman's or a master's certification.

(Hatcher Depo., p. 36). Moreover, in addition to talking with Sollie, Hatcher stated that:

> [She also reviewed] documentation that we had accumulated from '96, which we call PDQ's, which are position description questionnaires. So it's a combination of information that I obtained to derive at the conclusion that a journeyman's card would be needed. . .
>
> [The information in the PDQ's] verified the tasks they actually performed, electrical type duties in wiring ball parks, construction, lighting, those type duties, which requires electrical background.

(Hatcher Depo., p. 39). Finally, when questioned as to whether the journeyman's requirement was added at the behest of Drake and Sollie, Hatcher responded that the change was made "[b]ased on the job duties performed . . . not the fact that it was requested by the department head." (Hatcher Depo., p. 67). Indeed, to the best of her knowledge, no one involved in the announcement process "was dissatisfied or did not believe [that the journeyman card was a legitimate requirement]." (Hatcher Depo., p. 81).

32

Therefore, assuming *arguendo* that Malone's supervisors in the Roads and Transportation Department recommended the inclusion of a journeyman electrician's certificate for the sole purpose of excluding Malone, the Personnel Board, through Hatcher, broke the chain of causation between Jefferson County's recommendation and the Personnel Board's final determination that the journeyman electrician's certificate was a legitimate requirement for the County TCS position.

If Malone is to prevail on his disparate treatment claims against the Personnel Board, he must present evidence that a discriminatory animus was harbored by the Personnel Board itself, via its decision-making employees. However, the only evidence Malone has been able to muster against the Personnel Board consists of racially biased statements allegedly made by Director Payton. In particular, a Personnel Board employee testified that Payton referred to one black co-worker as a "dumb nigger" and commented that another co-worker wore a "nigger hat" to work. (Maze Depo., pp. 11-15). According to Maze's own testimony, however, Payton's statements occurred approximately two years before the Personnel Board even considered including a journeyman electrician's requirement in the TCS job announcement. Moreover, based on the record, Payton had absolutely no input, positive or negative, into the validity of adding a journeyman electrician's requirement to the TCS announcement. (Hatcher Depo., pp. 64-67). *See Mauter v. Hardy Corp.*, 825 F2d 1554, 1558 (11th Cir. 1987) (an alleged comment by the company vice president that management planned to "weed out the old ones" does not undermine defendant's articulated reason for plaintiff's dismissal because it was undisputed that the vice president played no role in the termination decision). Payton's remote and unrelated comments,

33

along with Malone's conclusory allegations that the Personnel Board discriminated against him on the basis of his race, are simply insufficient to create a jury issue on the question of intentional discrimination. *See Walker v. Nations Bank N.A.*, 53 F.3d 1548, 1555 (11th Cir. 1995) ("[a] jury question does not exist because of the presence of a 'mere scintilla of evidence'; rather, '[t]here must be a conflict in substantial evidence to create a jury question.'"). Accordingly, summary judgment is due to be granted on Malone's Title VII and § 1983 claims for failure to permanently promote him to a TCS position.

## V.   Conclusion

The court will enter an appropriate order in conformity with this memorandum opinion granting the Personnel Board's motion for summary judgment in all respects, denying Jefferson County's motion for summary judgment on Malone's Title VII and § 1983 claims with respect to the denial of a provisional appointment, and granting Jefferson County's motion in all other respects.

Done, this _21st_ of November, 2000.

EDWIN NELSON
UNITED STATES DISTRICT JUDGE

34